Matter of Lowry (Uber Tech., Inc--Commissioner of Labor) (2020 NY Slip Op 07645)





Matter of Lowry (Uber Tech., Inc--Commissioner of Labor)


2020 NY Slip Op 07645


Decided on December 17, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 17, 2020

530395

[*1]In the Matter of the Claim of Colin Lowry, Respondent. Uber Technologies, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date: November 18, 2020

Before: Lynch, J.P., Clark, Mulvey and Colangelo, JJ.


Littler Mendelson PC, New York City (Andrew M. Spurchise of counsel), for appellant.
Brooklyn Legal Services, New York City (Nicole Salk of counsel), for Colin Lowry, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



Colangelo, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed April 29, 2019, which ruled, among other things, that Uber Technologies, Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Uber Technologies, Inc. operates a digital platform, accessed via a smartphone app, that pairs customers in need of vehicular transportation with an available driver who picks them up and drives them to their final destination. Claimant was engaged as a driver for Uber its Upstate New York market and he applied for unemployment insurance benefits after he stopped participating on the platform.[FN1] The Department of Labor issued initial determinations finding that claimant was an employee of Uber and that Uber was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated. Uber objected and, following a hearing, an Administrative Law Judge upheld the initial determinations. The Unemployment Insurance Appeal Board affirmed, and Uber appeals.
We affirm. "It is well settled that whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the . . . [B]oard, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary decision" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010] [internal quotation marks, brackets and citations omitted]; see Matter of Giampa [Quad Capital, LLC-Commissioner of Labor], 181 AD3d 1129, 1129 [2020]). "Although no single factor is determinative, the relevant inquiry is whether the purported employer exercised control over the results produced or the means used to achieve those results, with control over the latter being the more important factor" (Matter of Dwyer [Nassau Regional Off-Track Corp.-Commissioner of Labor], 138 AD3d 1369, 1370 [2016] [citations omitted]; accord Matter of Sischo [Safeguard Props. LLC-Commissioner of Labor], 180 AD3d 1112, 1113 [2020], lv denied 35 NY3d 915 [2020]).
To become a driver, claimant was required to provide Uber with a valid driver's license, vehicle registration and proof of current auto insurance. A driver must also pass a background check and a driving history check. Claimant was also required to sign a Technology Services Agreement (hereinafter TSA). Pursuant to the TSA, a driver must use his or her own vehicle and the vehicle must be authorized by Uber as meeting its "then-current" requirements. Uber requires that the vehicle be less than 15 years old, have four doors, five factory installed seats, five seat belts, working windows and air conditioning. Once an individual has his or her vehicle approved by Uber, and he or she passes the background checks [*2]and provides the required documentation, he or she is provided a driver's identification and password that can be used to log on as a driver to Uber's digital platform by way of a smartphone app. A driver then may log on to the app when he or she is available to provide transportation services. A driver has no set schedule and may log on as often or as little as the driver chooses, although, pursuant to the TSA, Uber reserves the right to deactivate a driver's account if he or she fails to provide transportation services to a customer at least once a month.
When a customer requests transportation, he or she does not choose a particular driver. Rather, the Uber platform sends the customer's location solely to the logged-on driver who is closest in proximity to the customer's pickup location at the time, using its GPS navigation system. The driver has 15 seconds to accept the customer's request. If the driver rejects the request, Uber sends the request to the next closest driver. If all available drivers ultimately refuse the request, then the customer is informed that no ride is available. Drivers are not penalized for refusing a customer's request.
If the driver accepts the request, the customer is provided with the driver's location and the estimated fare. Uber unilaterally calculates the fare and collects the customer's payment through the app at the completion of the trip. Uber then subtracts a 20% to 30% service fee and pays the driver the remainder, plus any tip provided by the customer. Uber bears the loss if it cannot collect the fare and charges a cancellation fee if the customer cancels the trip more than two minutes after he or she had scheduled it or does not show up after the driver has waited five minutes at the pickup location. Uber pays the driver the cancellation fee. It is recommended by Uber that drivers wait at least 10 minutes for the customer to show up at the requested pickup location before leaving. A driver is not advised of the location where the customer wants to be dropped off until he or she accepts the request and picks up the customer. Drivers may cancel the trip without penalty at any time. Although Uber provides the drivers with its GPS navigation system, the drivers choose the route to take in transporting the customers and they may use other navigation systems or their personal knowledge in selecting the route taken. Pursuant to the TSA, however, Uber reserves the right to reduce the fare collected if the driver "took an inefficient route."
Drivers are responsible for fuel and vehicle maintenance costs. Uber offers drivers who complete a certain number of trips per month use of a gasoline credit card. Drivers are responsible for the charges on the card, but the card provides discounts on fuel and other items. If the transportation requires the payment of a toll, Uber adds that amount to the customer's fare and reimburses that amount to the driver. Uber will reimburse drivers for reasonable [*3]costs related to repairing damage done to their vehicles by customers. A driver may not transport any individuals other than the customer and the customer's authorized passengers during the trip. Uber handles all complaints and, pursuant to the TSA, requires that drivers provide services "in a professional manner with due skill, care and diligence" and "maintain high standards of professionalism, service and courtesy." Further, a driver is prohibited from, among other things, physically contacting the customer during the trip, using inappropriate language or gestures and contacting the customer after the trip is over.
Uber employs an anonymous five-star rating system whereby both drivers and customers may rate each other after the trip is completed. Uber makes the ratings available on its digital platform. Drivers are informed on Uber's website that customers rely on a variety of factors when rating them, including navigation, vehicle cleanliness and the drivers' communication with them. If a driver falls below a 4.6 overall rating, Uber provides tips on how to improve. If the rating remains below the 4.6 threshold, the driver's account could be deactivated.
Based upon the record as a whole, we conclude that substantial evidence supports the Board's finding that Uber exercised sufficient control over the drivers to establish an employment relationship. Uber controls the drivers' access to their customers, calculates and collects the fares and sets the drivers' rate of compensation. Drivers may choose the route to take in transporting customers, but Uber provides a navigation system, tracks the drivers' location on the app throughout the trip and reserves the right to adjust the fare if the drivers take an inefficient route. Uber also controls the vehicle used, precludes certain driver behavior and uses its rating system to encourage and promote drivers to conduct themselves in a way that maintains "a positive environment" and "a fun atmosphere in the car." Considering the foregoing, we find no reason to disturb the Board's finding of an employment relationship (see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 137-139 [2020]; Matter of Rivera [State Line Delivery Serv.-Roberts], 69 NY2d 679, 682 [1986], cert denied 481 US 1049 [1987]; Matter of Jung Yen Tsai [XYZ Two Way Radio Serv., Inc.-Commissioner of Labor], 166 AD3d 1252, 1254-1255 [2018]).
Lynch, J.P., Clark and Mulvey, JJ., concur.
ORDERED that the decisions are affirmed, without costs.



Footnotes

Footnote 1: Uber also operates a separate New York City market. The decisions at issue herein, however, are limited to drivers in the Upstate New York market.